**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BERTHA ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-cv-00772-WKW-DRB** |
| | ) | |
| **TALLAPOOSA COUNTY** | ) | |
| **J AIL STAFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Tallapoosa County Sheriff Jimmy Abbett, Chief Deputy Kenny Sherrer, Jail Administrator Blake Jennings, Lt. Jason Cowart, Sgt. Patricia Guthrie, Sgt. Chris Nail, and Corrections Officer Dodi Shaddix, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On August 28, 2006, Plaintiff Bertha Allen filed her Complaint in the United States District Court for the Middle District of Alabama. On August 30, 2006, this Court ordered the Defendants to file a Special Report and Answer in response to Plaintiff's Complaint.

Plaintiff was transferred to the Tallapoosa County Jail on March 21, 2006 from the Houston County Jail on charges of receipt of stolen property and possession of a forged instrument. (Exhibit A, Uniform Arrest Report[1] and Alabama Uniform Incident Report; Exhibit C, Grand Jury Indictment; Exhibit D, Tallapoosa County Jail In-processing Checklist; Exhibit E, Order from Tallapoosa County Circuit Court dated March 8, 2006.) Plaintiff was sentenced on April 13, 2006 to fifteen years imprisonment due to her being a habitual offender. (Exhibit F,

---

[1] For authentication of documents which are part of Plaintiff's Inmate File, see Exhibit B, Affidavit of Blake Jennings, "Jennings Aff.," ¶ 22.

Plea Agreement.)  The Plaintiff was released from the Tallapoosa County Jail and transferred to Tutwiler Women's Prison on June 16, 2006.  (Exhibit G, Tallapoosa County Jail Out-processing Checklist.)

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that, on May 30, 2006, she told Lt. Cowart before Inmate Missy Eason was placed into Plaintiff's cell (A-2) that Eason was a "known violent person, [Eason] has assaulted other inmates, and that [Eason] was a threat to us being in there[2]."  (Plaintiff's Complaint, p. 3.)  Plaintiff states that after talking with Lt. Cowart she was returned to cellblock A-2, at which time Eason "started verbally cussing [her] out" "which lead to a physical altercation between her and myself."  (Plaintiff's Complaint, p. 3.)  During this fight Eason's fingernail allegedly cut Plaintiff's eye and Plaintiff was given immediate medical treatment. (Plaintiff's Complaint, p. 3.)  Plaintiff claims that rights guaranteed to her by the Eighth Amendment have been violated by Defendants failure to protect her from harm.  (Plaintiff's Complaint, p. 2.)

Plaintiff also complains that on April 20, 2006, she overheard Eason tell Officer Shaddix that Eason felt like fighting someone in A-2, but that Shaddix did not move Eason from A-2. (Plaintiff's Complaint, p. 3.)  Plaintiff states that Shaddix told Eason not to fight anyone. (Plaintiff's Complaint, p. 3.)  On April 22, 2006, Eason fought with inmate Kristy Jones in cell A-2.  Then Sgt. Nail moved Eason to cell A-1.  (Plaintiff's Complaint, p. 3.)

Plaintiff also complains that Defendants did not transport her to a hearing against Eason on August 3, 2006, although she was incarcerated at Tutwiler on this date.  (Plaintiff's Complaint, p. 3.)

---

[2] In her statement to the officer who investigated the altercation between Plaintiff and Eason, Plaintiff stated that she told Cowart that "Missy [Eason] was a violent person and that she was going to fight with someone."  (Exhibit H, Tallapoosa County Sheriff Department Interview Sheet signed by Plaintiff.)

The Plaintiff requests monetary damages in the amount of $75,000, compensatory damages in the amount of $75, 000, punitive damages in the amount of $80,000, as well as filing fees and court costs to be paid by Defendants.  (Plaintiff's Complaint, p. 4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.  (Exhibit I, Affidavit of Sheriff Jimmy Abbett[3], "Abbett Aff.," ¶ 4; Exhibit J, Affidavit of Kenny Sherrer[4], "Sherrrer Aff.," ¶ 4; Jennings Aff.[5] ¶ 4; Exhibit K, Affidavit of Jason Cowart[6], "Cowart Aff.," ¶ 4; Exhibit L, Affidavit of Patricia Guthrie[7], "Guthrie Aff.," ¶ 4; Exhibit M, Affidavit of Chris Nail[8], "Nail Aff.," ¶ 4; Exhibit N, Affidavit of Dodi Shaddix[9], "Shaddix Aff.," ¶ 4.)  Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

---

[3] Sheriff Abbett is the duly elected Sheriff of Tallapoosa County, Alabama.  He has served as Sheriff since 1995. Prior to serving as Sheriff, Sheriff Abbett retired from the Alabama Bureau of Investigation where he served as an Investigator.  (Abbett Aff. ¶ 2.)

[4] Chief Deputy Sherrer is employed as the Chief Deputy for the Tallapoosa County Sheriff and was so employed during Plaintiff's incarceration at the Tallapoosa County Jail.  (Sherrer Aff. ¶ 2.)

[5] Blake Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998.  He served as an Investigator from 1998 until he became the Jail Administrator on March 19, 2005.  Jail Administrator Jennings is a graduate of the Corrections Academy.  (Jennings Aff. ¶ 2.)

[6] Lt. Cowart is employed as a Corrections Officer at the Tallapoosa County Jail with the rank of Lieutenant and is a graduate of the Corrections Academy.  (Cowart Aff. ¶ 2.)

[7] Sgt. Guthrie is employed as a Corrections Officer at the Tallapoosa County Jail with the rank of Sergeant and is a graduate of the Corrections Academy.  Sgt. Guthrie was employed in this capacity during Plaintiff's incarceration at the Tallapoosa County Jail.  (Guthrie Aff. ¶ 2.)

[8] Sgt. Nail is employed as a Corrections Officer at the Tallapoosa County Jail with the rank of Sergeant.  He was promoted to the rank of Sergeant on January 6, 2006 and is a graduate of the Corrections Academy.  (Nail Aff. ¶ 2.)

[9] Officer Shaddix is employed as a Corrections Officer at the Tallapoosa County Jail and is a graduate of the Corrections Academy.  Officer Shaddix was employed in this capacity during Plaintiff's incarceration at the Tallapoosa County Jail. (Shaddix Aff. ¶ 2.)

## I.    FACTS

Sheriff Jimmy Abbett has delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to Blake Jennings, the Jail Administrator for Tallapoosa County.  As Sheriff of Tallapoosa County, Sheriff Abbett is responsible for promulgating the policies governing the Tallapoosa County Jail.  (Abbett Aff. ¶ 5.)  Sheriff Abbett has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.  (Abbett Aff. ¶ 3.)

It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.  (Abbett Aff. ¶ 6; Jennings Aff. ¶ 6; Sherrer Aff. ¶ 6; Cowart Aff. ¶ 11; Guthrie Aff. ¶ 6; Nail Aff. ¶ 6; Shaddix Aff. ¶ 10.)  Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.  (Abbett Aff. ¶ 7; Jennings Aff. ¶ 7; Sherrer Aff. ¶ 7; Cowart Aff. ¶ 12; Guthrie Aff. ¶ 7; Nail Aff. ¶ 7; Shaddix Aff. ¶ 11.)  Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.  (Abbett Aff. ¶ 8; Jennings Aff. ¶ 8; Sherrer Aff. ¶ 8; Cowart Aff. ¶ 13; Guthrie Aff. ¶ 8; Nail Aff. ¶ 8; Shaddix Aff. ¶ 12.)

Inmates are housed separately from any known enemies.  (Abbett Aff. ¶ 9; Jennings Aff. ¶ 9; Sherrer Aff. ¶ 8; Cowart Aff. ¶ 14; Guthrie Aff. ¶ 9; Nail Aff. ¶ 9; Shaddix Aff. ¶ 13.)  An inmate may make an oral or written request at any time to any officer to be moved to a different cell if he has been threatened or is otherwise in danger.  Each cell is equipped with an intercom, so an inmate may make such a request at any time.  (Abbett Aff. ¶ 10; Jennings Aff. ¶ 10; Sherrer Aff. ¶ 8; Cowart Aff. ¶ 15; Guthrie Aff. ¶ 10; Nail Aff. ¶ 10; Shaddix Aff. ¶ 14.)

All Tallapoosa County Jail officers understand that such a request is to be taken seriously.  In the event an inmate requests to be moved because he has been threatened or is

4

otherwise in danger, that inmate will be moved immediately. (Abbett Aff. ¶ 11; Jennings Aff. ¶ 11; Sherrer Aff. ¶ 8; Cowart Aff. ¶ 16; Guthrie Aff. ¶ 11; Nail Aff. ¶ 11; Shaddix Aff. ¶ 15.)

It is the policy of the Tallapoosa County Jail that, anytime an assault takes place in the Tallapoosa County Jail, the responding officers are to ensure that any medical needs are met, involved inmates are separated, and an investigator from the Tallapoosa County Sheriff's Department is called to investigate the incident. (Abbett Aff. ¶ 15; Jennings Aff. ¶ 15; Sherrer Aff. ¶ 13;

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates, and this policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either Jail Administrator Jennings or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File. (Abbett Aff. ¶ 16; Jennings Aff. ¶ 18; Sherrer Aff. ¶ 14; Cowart Aff. ¶ 18; Guthrie Aff. ¶ 13; Nail Aff. ¶ 13; Shaddix Aff. ¶ 17; Exhibit O, Inmate grievance policy from Tallapoosa County Jail Inmate Handbook.) Inmate grievances are also logged into a database kept on the jail's computer system. (Jennings Aff. ¶ 18.)

Upon the Jail Administrator's review of the Plaintiff's inmate file, and the jail computer database, there is no grievance filed by Plaintiff regarding the altercation between Plaintiff and Eason. (Jennings Aff. ¶ 18.) Further, no Defendant received a grievance from the Plaintiff regarding the incident made the basis of this Complaint. (Abbett Aff. ¶ 17; Jennings Aff. ¶ 17;

Sherrer Aff. ¶ 15; Cowart Aff. ¶ 18; Guthrie Aff. ¶ 13; Nail Aff. ¶ 13; Shaddix Aff. ¶ 17.) Inmates can appeal the outcome of a grievance to the Jail Administrator, then to the Chief Deputy, and finally to the Sheriff. Neither Sheriff Abbett, Chief Deputy Sherrer or Jail Administrator Jennings has received an appeal of a grievance from Plaintiff. (Abbett Aff. ¶ 17; Jennings Aff. ¶ 19; Sherrer Aff. ¶ 15). Plaintiff understood the grievance procedures at the Tallapoosa County Jail and knew how to file a grievance as evidenced by a grievance she filed on March 23, 2006 regarding a hair comb. (Exhibit P, Allen Grievance dated March 23, 2006.)

The Defendants have complied with all policies and procedures of the Tallapoosa County Jail. They are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Abbett Aff. ¶ 19; Jennings Aff. ¶ 21; Sherrer Aff. ¶ 16; Cowart Aff. ¶ 19; Guthrie Aff. ¶ 14; Nail Aff. ¶ 14; Shaddix Aff. ¶ 18.)

In April of 2006, prior to the incident between Eason and Inmate Kristy Baker[10], Eason stated to Officer Shaddix that she was "in a fighting mood today." Shaddix told Ms. Eason that if any sort of confrontation happened, if cross words were said or if she felt like a fight was going to break out to push the call button in the cell and she would be immediately removed. (Shaddix Aff. ¶ 5.)

Plaintiff overheard Ms. Eason's statement and stated generally to Officer Shaddix "you could feel threatened by Missy." Plaintiff never stated or indicated to Shaddix that *she felt* threatened by Missy Eason. Plaintiff has never made any comment to Shaddix indicating that she feared violence from Ms. Eason. (Shaddix Aff. ¶ 6.)

Officer Shaddix told Plaintiff that if Plaintiff had any problems with Eason and felt like there might be a fight, she should push the intercom button in the cell to call a corrections officer

---

[10] Plaintiff incorrectly identifies this inmate as Kristy Jones.

and Plaintiff would be removed from the cell.  Shaddix was not aware of any history of animosity or fighting between Plaintiff and Ms. Eason.  (Shaddix Aff. ¶ 7.)  The Plaintiff had never made a request to Shaddix to be separated from Missy Eason.  (Shaddix Aff. ¶ 16.)

On April 22, 2006, Inmate Missy Eason, who was housed in cell A-2, got into a fight with Inmate Kristy Baker, who was also housed in A-2.  Eason was moved to cell A-1 at this time.  On May 30, 2006, Eason was moved to cell A-2 because she was having problems with an inmate in cell A-1.  Kristy Baker was gone from the jail by this time.  A-1 and A-2 are the two female cells at the Tallapoosa County Jail.  (Jennings Aff. ¶ 5.)

After the altercation between Baker and Eason, Shaddix was not involved in placing Eason back into cell A-2.  (Shaddix Aff. ¶ 8.)

On May 30, 2006, just before Inmate Missy Eason was moved into cell A-2, which housed the Plaintiff, Plaintiff asked if she could speak with Lt. Cowart.  Plaintiff was taken to Cowart's office so that she could speak to him.  Plaintiff stated to Cowart that Inmate Eason "has a mouth" and was "violent."  Plaintiff did not request that she be moved from cell A-2.  Instead, Plaintiff stated that she wanted Eason moved to an isolation cell because Plaintiff was "tired of her mouth."  (Cowart Aff. ¶5.)

Lt. Cowart told Plaintiff that Ms. Eason would not be moved unless she had done something wrong.  Plaintiff did not state that Ms. Eason had threatened her.  In fact, Plaintiff specifically stated that she was not scared of Ms. Eason.  Plaintiff stated "if she [Ms. Eason] starts talking, I'm not going to listen."  (Cowart Aff. ¶6.)

This is the only time that Plaintiff has ever made any statement to Cowart concerning Missy Eason.  If Plaintiff had indicated that she was threatened or otherwise in danger, Cowart would have moved her to a different cell.  Before the incident between Plaintiff and Ms. Eason

took place, Cowart was unaware of any previous arguments or fights between these two inmates and was unaware of any history of animosity between these two inmates. (Cowart Aff. ¶7.) Had the Plaintiff made Cowart aware that she was threatened by Eason, she would have been separated from Eason immediately. However, despite having the opportunity, the Plaintiff never made Cowart aware of such. (Cowart Aff. ¶ 17.)

Neither the Plaintiff nor anyone else had ever made any Defendant aware that the Plaintiff had been threatened by Eason or felt that she was in danger because she was housed with Eason. The Plaintiff never asked Sheriff Abbett, Chief Deputy Sherrer, Administrator Jennings. Lt. Cowart, Sgt. Guthrie, Sgt. Nail or Officer Shaddix to be moved out of the cell where Eason was housed. Further, no Defendant was aware of any problems between the Plaintiff and Eason or history of animosity or fighting between Plaintiff and Eason until after the incident made the basis of the Complaint took place. (Abbett Aff. ¶ 14; Jennings Aff. ¶ 12; Sherrer Aff. ¶ 12; Guthrie Aff. ¶¶ 5, 12; Nail Aff. ¶ 12; Cowart Aff. ¶¶ 7, 17; Shaddix Aff. ¶ 7.) Had the Plaintiff made any of the officers aware that she was threatened by Eason, she would have been separated from Eason immediately per Tallapoosa County Jail policy. (Abbett Aff. ¶ 12; Jennings Aff. ¶ 13; Sherrer Aff. ¶ 11; Guthrie Aff. ¶ 11; Nail Aff. ¶ 11; Cowart Aff. ¶ 17; Shaddix Aff. ¶¶ 15, 16.)

At the time of the incident between Allen and Eason, space was available in cells B6 or B7 to move these inmates had either requested to be separated. Cells B6 and B7 are isolation cells that can house up to two inmates. (Jennings Aff. ¶ 14.)

Per Jail policy, an investigator from the Tallapoosa County Sheriff's Department was called in to investigate the altercation between Plaintiff and Ms. Eason after the incident took place. (Jennings Aff. ¶ 16; Cowart Aff. ¶ 8; Exhibit H, Tallapoosa County Sheriff Department

Interview Sheets of Bertha Allen, Missy Eason, Delberah Whitaker, Jessica McDaniel, Teresa Fuller, and Elizabeth Krause.)  Lt. Cowart responded to the fight between Ms. Eason and Plaintiff.  After the investigation it was unable to be determined who started the fight.  (Cowart Aff. ¶ 9.)

After Plaintiff was transferred to Tutwiler Women's Prison, neither Sheriff Abbett or Administrator Jennings received an order from any court to transport the Plaintiff to a hearing. When Plaintiff was transferred to Tutwiler, she was no longer within the custody of the Tallapoosa County Sheriff, and the Tallapoosa County Sheriff had no responsibility or right to transport her anywhere without a court order.  (Jennings Aff.¶ 20; Abbett Aff. ¶ 18.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a

person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and, accordingly, claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

**B.     Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.     Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to her.  First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail.  Second, she has not alleged that she pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Despite the availability of a grievance procedure at the Tallapoosa County Jail, the Plaintiff did not file a grievance regarding the incident made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Tallapoosa County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has

provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, she is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former §1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because she has not suffered any physical injury as a result of the allegations in his Complaint.**
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002) (quotation marks omitted).  The evidence shows that the Plaintiff only had a superficial cut to her eye as a result of the incident made the basis of her Complaint.  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.    Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff, Chief Deputy, Jail Administrator and Correction Officers of Tallapoosa County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.

See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d 1419, 1424 (11th Cir. 1997). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

"[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (U.S. 1994). A jail officer only violates the Eighth Amendment

when two conditions are met: (1) the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 834 and 837. Deliberate indifference is roughly equivalent to criminal recklessness. Id. at 839-890.

The Eleventh Circuit considered a case **where the inmate had not requested protection from the other inmate involved and where the officer had no knowledge of a threat prior to the injury, and concluded that a plaintiff's failure to protect claim must fail.** Carter v. Galloway, 352 F.3d 1346, 1349-51 (11th Cir. 2003) ("[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." Id. at 1350); see also McBride v. Rivers, 2006 WL 622591, * 3 (11th Cir. 2006) (holding that, where the plaintiff "did not identify a specific prior incident [to the defendant], from which the defendant could infer that a substantial risk existed," the plaintiff's failure to protect claim failed); Johnston v. Crosby, 135 Fed. Appx. 375, *2 (11th Cir. 2005) (holding that, where there was no evidence indicating that the plaintiff notified the defendants of any particularized threat, the plaintiff failed to show "deliberate indifference to a substantial risk of serious harm and, thus, a violation of the Eighth Amendment.") "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (U.S. 1994). In Carter, the facts were as follows:

> Defendants' [sic] clearly knew that Inmate Barnes was a "problem inmate" with a well-documented history of prison disobedience and had been prone to violence. Defendants also had specific notice from Plaintiff that Inmate Barnes acted crazy, roaming his cell like a "caged animal." . . . Defendant Galloway, serving as a Deputy Warden, heard many complaints from Plaintiff. But Plaintiff never told Galloway that Plaintiff feared Barnes or that Barnes clearly threatened Plaintiff.

> Plaintiff complained about Barnes acting crazy, wanting to fake a hanging, and making a statement that Plaintiff would help in the fake hanging "one way or another."

Carter, 352 F.3d at 1349. The Court in Carter held that "before defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [the inmate's] generally problematic nature." Id.

The alleged facts in the instant case are even less serious than the facts presented in Carter, where no constitutional violation was found. In the case at bar, the Plaintiff alleges that Eason was a problem inmate. However, just like the plaintiff in Carter, Plaintiff Allen has not alleged that she ever told the Defendants that she feared Eason or that Eason had threatened Plaintiff. In the instant case, Plaintiff has not shown that she was faced with substantial risk of serious harm, nor can she show that the Defendants were aware of any such risk. The Plaintiff does not allege that the Defendants were aware of any such risk, and the Defendants have testified that they did not, in fact, have any knowledge of such a risk. The Plaintiff had not requested protection from the other inmate involved, and the Defendants had no knowledge of a threat prior to the injury. In fact, Plaintiff does not allege that Eason started the alleged fight with the Plaintiff. And, just like the Plaintiff in McBride, the Plaintiff did not identify a specific prior incident to the Defendants from which they could infer that a substantial risk existed. Therefore, according to the law of the Eleventh Circuit, Plaintiff's failure to protect claim must fail.

Further, Plaintiff cannot maintain a claim against Defendants for not transporting her from Tutwiler to a hearing in Tallapoosa County. Plaintiff has admitted she was incarcerated at Tutwiler when this alleged hearing occurred and has presented no evidence that Defendants were ordered by any Court to transport Plaintiff to this hearing.

Because in the case at bar, the Plaintiff cannot show that the Defendants were "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exist[ed]" and that the Defendants actually drew the inference, the Plaintiff has failed to meet her burden in establishing deliberate indifference to a substantial risk of serious harm, and accordingly, she has failed to establish a constitutional violation.  See, e.g., Johnston v. Crosby, 135 Fed. Appx. at *2.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, she must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. She may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In light of applicable Eleventh Circuit law, it is obvious that the Defendants have done nothing to cross any bright line of clearly established constitutional law.  Therefore, the Plaintiff cannot meet her burden in this regard, and the Defendants are entitled to qualified immunity on

Plaintiff's claims.

    **D.**    **Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. <u>Swint v. City of Wadley</u>, 51 F. 3d 988, 999 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. <u>Zatler v. Wainwright</u>, 802 F. 2d 397, 401 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Abbett, Chief Deputy Sherrer, Jail Administrator Jennings, Lt. Cowart, Sgt. Guthrie, Sgt Nail or Officer Shaddix were in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the actions she claims were constitutionally infirm. There are absolutely no facts to show that Defendants personally participated in her claims, nor does the Plaintiff allege specifically how these Defendants violated her constitutional rights.

In fact, the Plaintiff never alleges facts showing that any Defendant was aware that she was in danger because she was housed with Eason, and the testimony of the Defendants show that they were not aware of any such danger.

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, the claim must similarly fail. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). The Eleventh Circuit in <u>Hartley v. Parnell</u>, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

    Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal

> connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, all Plaintiff's claims are due to be dismissed.

### E. Plaintiff is not entitled to punitive damages.

"[P]unitive damages in an action under § 1983 [are only available] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (U.S. 1983). see also Ferrill v. Parker Group, Inc., 168 F.3d 468 (11th Cir. 1999):

> 'Punitive damages are disfavored by the law and are awarded solely to punish defendants and deter future wrongdoing.' To support a punitive damages award, a plaintiff must show that the defendant acted with malice or reckless indifference to the plaintiff's federally protected rights. Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'

Ferrill, 168 F.3d at 468 (internal citations omitted).

The Plaintiff has not sufficiently alleged facts showing "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others" on the part of Defendant s. Therefore, punitive damages are not proper against Defendants, and all claims for punitive damages are due to be dismissed.

F.      **Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[11]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Bertha Allen, in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which she is entitled.

---

[11] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion

for Summary Judgment, and grant unto them the same.

Respectfully submitted this 30th day of October, 2006.

**s/Ashley Hawkins Freeman**
ASHLEY HAWKINS FREEMAN Bar No.  FRE044
AMANDA KAY MORGAN Bar No.  ALL079
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  afreeman@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of October, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Bertha Allen
AIS 134004
Julia Tutwiler Prison for Women
8966 U. S. Highway 231 North
Wetumpka, AL 36092

**s/Ashley Hawkins Freeman**
OF COUNSEL

**Exhibit A**
**Uniform Arrest Report and**
**Alabama Uniform Incident Report**

**AMA UNIFORM ARREST REPORT**

| Fingerprinted | R84 Completed |
|---|---|
| ☒ Yes | ☒ Yes |
| ☐ No | ☐ No |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

## IDENTIFICATION

| 1 ORI | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| 0 6 2 0 1 0 0 | ALEXANDER CITY POLICE DEPARTMENT | 0 5 1 0 0 0 5 2 9 | |

| 5 LAST, FIRST, MIDDLE NAME | 6 ALIAS AKA |
|---|---|
| ALLEN, BERTHA YVONNE | |

| 7 SEX | 8 RACE | 9 HGT | 10 WGT | 11 EYE | 12 HAIR | 13 SKIN | 14 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ M ☒ F | ☐ 1 W ☐ 3 A ☒ 2 B ☐ 4 I | 504 | 164 | BRO | BLK | | ☐ 1 SCARS | ☐ 2 MARKS | ☐ 3 TATTOOS | ☐ 4 AMPUTATIONS |

| 5 PLACE OF BIRTH (CITY, COUNTY, STATE) | 15 SSN | 17 DATE OF BIRTH | 18 Age | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| DETROIT , MI | 4 2 2 - 8 0 - 9 6 0 5 | 0 5 2 4 5 8 | 47 | |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| 24 FBI # | HENRY CLASS / NCIC CLASS | | | | | | | 25 IDENTIFICATION COMMENTS | |

| 26 ☐ RESIDENT ☒ NON–RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) | 28 RESIDENCE PHONE | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|
| | 3554-B YOUNG DR. MONTGOMERY, AL 36108 | ( ) | |

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS ( STREET, CITY, STATE) | 32 BUSINESS PHONE |
|---|---|---|
| UNKNOWN | | |

## ARREST

| 33 LOCATION OF ARREST ( STREET, CITY, STATE, ZIP) | 34 SECTOR | 35 ARRESTED FOR YOUR JURISDICTION ☒ YES ☐ NO |
|---|---|---|
| 1 COURT SQUARE ALEXANDER CITY, AL | 3 | ☒ IN STATE ☐ OUT STATE AGENCY |

| 36 CONDITION OF ARRESTEE | 37 RESIST ARREST? | 38 Injuries? | 39 ARMED? | 40 DESCRIPTION OF WEAPON |
|---|---|---|---|---|
| ☐ DRUNK ☒ SOBER ☐ DRINKING ☐ DRUGS | ☐ YES ☒ NO | ☒ 1 NONE ☐ 2 OFFICER ☐ 3 ARRESTEE | ☐ Y ☒ N | ☐ 1 HANDGUN ☐ 4 OTHER FIREARM ☐ 2 RIFLE ☐ 5 OTHER WEAPON ☐ 3 SHOTGUN |

| 41 DATE OF ARREST | 42 TIME OF ARREST | 43 DAY OF ARREST | 44 TYPE ARREST | 45 ARRESTED BEFORE? |
|---|---|---|---|---|
| 1 0 0 7 0 5 | 1400 ☐ 1. AM ☒ 2. PM ☐ 3. MIL | S M T W T ☒S | ☒ ON VIEW ☐ CALL ☐ WARRANT | ☒ YES ☐ NO ☐ UNKNOWN |

| 46 CHARGE–1 ☒ FEL ☐ MISD | 47 UCR CODE | 48 CHARGE–2 ☒ FEL ☐ MISD | 49 UCR CODE |
|---|---|---|---|
| RECEIVING STOLEN PROPERTY 2ND DEGREE | | CRIM POSS OF A FORGED INSTRUMENT 2ND | |

| 50 STATE CODE/LOCAL ORDINANCE | 51 WARRANT # | 52 DATE ISSUED | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | 55 DATE ISSUED |
|---|---|---|---|---|---|
| 13A-8-18 / 806 | | M D Y | 13A-9-6 / 806 | | M D Y |

| 56 CHARGE–3 ☐ FEL ☐ MISD | 57 UCR CODE | 58 CHARGE–4 ☐ FEL ☐ MISD | 59 UCR CODE |
|---|---|---|---|
| | | | |

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT | 62 DATE ISSUED | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED |
|---|---|---|---|---|---|
| | | M D Y | | | M D Y |

| 66 ARREST DISPOSITION | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| ☒ HELD ☐ TOT-LE ☐ BAIL ☐ OTHER ☐ RELEASED | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

## VEHICLE

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP / BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 71 VIN | 79 IMPOUNDED? ☐ YES ☐ NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|
| | | |

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | |
|---|---|
| | ☐ CONTINUED IN NARRATIVE |

## JUVENILE

| 82 JUVENILE DISPOSITION: ☐ HANDLED AND RELEASED ☐ REF TO JUVENILE COURT ☐ REF TO WELFARE AGENCY ☐ REF TO OTHER POLICE AGENCY ☐ REF TO ADULT COURT | 83 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 83 PHONE ( ) |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |
|---|---|---|---|

## RELEASE

| 91 DATE AND TIME OF RELEASE | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID # |
|---|---|---|---|
| M D Y ☐ 1. AM ☐ 3. MIL ☐ 1. PM | | | |

| 95 RELEASED TO | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐ YES ☐ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY |
|---|---|---|

| | LOCAL USE |
|---|---|
| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER | STATE USE |

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED ☐ Y ☐ N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M) | 112 ID# | 113 ARRESTING OFFICER (LAST, FIRST, M) | 114 ID # | 115 SUPERVISOR ID # | 116 WATCH CMDR ID # |
|---|---|---|---|---|---|
| JONES , KEITH INV. | 223 | | | | |

TYPE OR PRINT IN BLACK INK ONLY

AC JIC 34 REV 10 90

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ADDITIONAL ARREST NARRATIVE CONTINUED | 117 DATE AND TIME OF ARREST | | 118 CASE # | 119 SFX |
|---|---|---|---|---|
| | 1 0 0 7 0 5 | 1400 | ☐ AM ☐ PM ☒ MIL  0 5 1 0 0 0 5 2 9 | 1 |

**120 ADDITIONAL ARREST INFORMATION**

10-07-05  BERTHA YVONNE ALLEN WAS ARRESTED ON PROBABLE CAUSE FOR RECEIVING STOLEN PROPERTY 2ND DEGREE, DUE THE FACT THAT SHE ALONG WITH TWO OTHER SUSPECTS HAD IN THEIR POSSESSION A STOLEN DEBIT CARD FROM WINN DIXIE. SHE WAS ALSO ARRESTED FOR CRIMINAL POSSESSION OF A FORGED INSTRUMENT DUE TO THE FACT SHE ATTEMPTED TO PASS A FORGED CHECK ON THE CLOSED ACCOUNT OF MICHELLE CROSKEY AT THE ALEXANDER CITY WINN DIXIE.

NARRATIVE

TYPE OR PRINT IN BLACK INK ONLY

## ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

| VICTIM SSN | COMPLAINANT SSN | 1 ☐ 1. INCIDENT ☒ 2. OFFENSE ☐ 3. SUPPLEMENT | 2 CASE # 0 5 1 0 0 0 5 2 9 | 3 SFX |
|---|---|---|---|---|

| 4 ORI # 0 6 2 0 1 0 0 | 5 DATE AND TIME OF THIS REPORT 1 M 0 0 D 6 0 Y 5   20:23 ☐AM ☒PM ☐MIL | 6 AGENCY NAME ALEXANDER CITY POLICE DEPARTMENT | 7 IF SUPPLEMENT ORIGINAL OFFENSE DATE M   D   Y |
|---|---|---|---|

| 8 REPORTED BY ☐ VICTIM OR SANFORD, DANNY | 9 ADDRESS ( STREET, CITY, STATE, ZIP ) 1061 HWY 280 ALEXANDER CITY AL. 35010 | 10 PHONE ( 256 ) 234-5141 |
|---|---|---|

| 11 ☐ MULTI VICTIM | 12 VICTIM (LAST, FIRST, MIDDLE NAME) WINN DIXIE   ☐1P ☒2S ☐3S | 13 ADDRESS ( STREET, CITY, STATE, ZIP ) 1061 HWY 280 ALEXANDER CITY AL. 35010 | 14 PHONE ( 256 ) 234-5141 |
|---|---|---|---|

| 15 EMPLOYER/SCHOOL | 16 OCCUPATION | 17 ADDRESS (STREET, CITY, STATE, ZIP) | 18 PHONE ( ) |
|---|---|---|---|

| ☐ RESIDENT ☐ NON-RESIDENT | 20 INJURY ☐Y ☐N | 21 RACE ☐W ☐A ☐B ☐I | 22 SEX ☐MALE ☐FEMALE | 23 HGT | 24 WGT | 25 DOB M   D   Y | 26 AGE | 27 WAS OFFENDER KNOWN TO VICTIM? ☐Y ☐N | 28 VICTIM WAS (EXPLAIN RELATIONSHIP) | 29 CODE |
|---|---|---|---|---|---|---|---|---|---|---|

| 30 TYPE INCIDENT OR OFFENSE   ☒ FEL.   ☐ MISD CRIMINAL POSSESSION OF FORGED INSTRUMENT | 31 DEGREE (CIRCLE) ① 2 3 | 32 UCR CODE | 33 STATE CODE/LOCAL ORDINANCE 13A-9-5 / 806 |
|---|---|---|---|

| 34 TYPE INCIDENT OR OFFENSE   ☒ FEL.   ☐ MISD RECEIVING STOLEN PROPERTY | 1 ② 3 | 36 UCR CODE | 37 STATE CODE/LOCAL ORDINANCE 13A-8-18 / 806 |
|---|---|---|---|

| 38 PLACE OF OCCURRENCE WINN DIXIE ALEXANDER CITY AL. 35010 | 39 SECTOR 1 |
|---|---|

**EVENT**

| 40 POINT OF ENTRY ☐ DOOR ☐ WINDOW ☐ ROOF ☐ OTHER | 41 METHOD OF ENTRY ☐ FORCIBLE ☐ NO FORCE ☐ ATT. FORCIBLE | 42 ASSAULT ☐ SIMPLE ☐ AGGR. | 43 TREATMENT FOR ASSAULT INJURY ☐Y ☐N |
|---|---|---|---|

| 44 OCCURRED ON OR BETWEEN 1 M 0 0 D 6 0 Y 5 | 45 TIME 19:40 ☐AM ☐PM ☒MIL | 46 | S M☒ T☒ W☒ T☒ F☒ S | 47 LIGHTING ☐ 1- NATURAL ☐ 2- MOON ☐ 3- ART. EXT. ☒ 4- ART. INT. ☐ 5- UNK. | 48 WEATHER ☒ 1 - CLEAR ☐ 2 - CLOUDY ☐ 3 - RAIN ☐ 4 - FOG ☐ 5 - SNOW ☐ 6 - HAIL ☐ 7 - UNK. | 49 PREMISE ☐ A - HWY - ST - ALLEY ☐ B - RAILROAD ☐ C - RESIDENCE ☐ D - CHURCH ☐ E - SCHOOL ☐ F - CONVENIENCE ☐ G - INDUSTRIAL ☐ H - SERVICE STA. | ☐ I - BANK ☐ J - DRUG STORE ☐ K - ART/TWN. HSE. ☒ L - SHOPPING CENTER ☐ M - PARKING LOT ☐ N - OTHER COMMER. ☐ O - OTHER | 50 CODE |
|---|---|---|---|---|---|---|---|---|
| 1 M 0 0 D 6 0 Y 5 | 52 TIME 20:23 ☐AM ☐PM ☒MIL | 53 | S M☒ T☒ W☒ T☒ F☒ S | | | | | |

| 54 VERIFY FOR RAPE EXAM ☐Y ☐N | 55 TREAT. FOR RAPE INJURY ☐Y ☐N | 58 CIRCUMSTANCES HOMICIDE & ASSAULT LOCATION: RAPE | |
|---|---|---|---|

| 58 WEAPON USED ☐ FIREARM ☐ KNIFE ☐ HANDS, FISTS, VOICE, ETC. ☐ OTHER DANGEROUS | 59 DESCRIPTION OF WEAPONS/FIREARMS/TOOLS USED IN OFFENSE DESCRIBE ☐ HANDGUN ☐ RIFLE ☐ SHOTGUN ☐ UNKNOWN |
|---|---|

**PROPERTY — DESCRIPTION**

| 60 QUANTITY | 61 STOLEN, RECOVERED, LOST, FOUND OR DESTROYED (INCLUDE MAKE MODEL, SIZE, TYPE, SERIAL NUMBER, COLOR., ETC.) | 62 DOLLAR VALUE STOLEN | DAMAGED | 63 RECOVERED DATE | VALUE |
|---|---|---|---|---|---|
| 1 | AMERICAN EXPRESS GIFT CARD | $100.00 | | | |
| 1 | COMPASS BANK CHECK # 605 IN THE NAME OF MICHELLE CROSKEY | | | | |
| | ACCT. # 163 9401 8 | | | 10-06-05 | $120.64 |

☐ CONTINUED IN NARRATIVE

**PROPERTY VALUE**

| 64 MOTOR VEHICLE S R D C | 65 CURRENCY, NOTES $100.00 $121.00 S R D C | 66 JEWELRY S R D C | 67 CLOTHING/ FURS S R D C | 68 FIREARMS S R D C | 69 OFFICE EQUIPMENT S R D C |
|---|---|---|---|---|---|
| 70 ELECTRONICS S R D C | 71 HOUSEHOLD S R D C | 72 CONSUMABLE S R D C | 73 LIVESTOCK S R D C | 74 MISCELLANEOUS S R D C | |

| 75 CHECK CATEGORIES ☐ STOLEN ☐ RECOVERED ☒ SUSPECTS VEH. ☐ VICTIMS VEH. ☐ UNAUTH. USE ☐ ABANDONED |
|---|

**VEHICLES**

| 76 #STOLEN | 77 LIC. 3B3525P | 78 U.S. AL | 79 LIY. 06 | 80 TAG COLOR | 81 VIN 2 M E F M 7 4 W 7 W X 6 5 2 8 4 1 1 |
|---|---|---|---|---|---|
| 82 VYR 98 | 83 VMA MERC | 84 VMO GRAN | 35 VST 4D | 86 VCO. | TOP: BOTTOM: GREEN | 87 ADDITIONAL DESCRIPTION |

| STOLEN MTR. VEH ONLY | 88 AREA STOLEN ☐ BUS. ☐ RES. ☐ RUR. | 89 OWNERSHIP VERIFIED BY: | ☐ TAG RECEIPT ☐ BILL OF SALE ☐ TITLE ☐ OTHER | 90 WARRANT SIGNED YES ☐ NO ☐ # |
|---|---|---|---|---|

| 21 AUTO INSURER NAME (COMPANY) ADDRESS (STREET, CITY, STATE, ZIP) | 92 PHONE ( ) |
|---|---|

| MOTOR VEH.RECOVERY ONLY REQUIRED FOR 24XX UCR CODE | 93 STOLEN IN YOUR JURISDICTION? ☐ NO ☐ WHERE? YES ☐ | 94 RECOVERED IN YOUR JURISDICTION? ☐ NO ☐ WHERE? YES ☐ |
|---|---|---|

TYPE OR PRINT IN BLACK INK

ACJIC—32 REV. 6-94

223

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| INCIDENT/OFFENSE REPORT CONTINUED | 95 DATE AND TIME OF REPORT | | | |
|---|---|---|---|---|

**INCIDENT/OFFENSE REPORT CONTINUED**

95 DATE AND TIME OF REPORT: 1 0 0 6 0 5  20 : 23  AM ☐ PM ☐ MIL ☒
96 CASE #: 0 5 1 0 0 0 5 2 9
97 SFX  98 ☐ OFFENDER  ☒ SUSPECT  ☐ MISSING PERSON  ☒ CHECK IF MULTIPLE

99 NAME (LAST, FIRST, MIDDLE): ALLEN, BERTHA YVONNE
100 NICKNAME/ALIAS
101 RACE: ☐ W ☐ A  ☒ B ☐ I  ☐ M
102 SEX: ☒ M ☐ F
103 DOB: 0 5 2 4 5 8  104 AGE: 47

105 ADDRESS (STREET, CITY, STATE ZIP): 3554-B YOUNG DR. MONTGOMERY AL. 36108
106 HGT: 504  107 WGT: 164  108 EYE: BRO  109 HAIR: BLK  110 COMPLEXION
111 PROBABLE DESTINATION
112 ARMED?: ☐ Y ☐ N ☐ UNK  113 WEAPON
114 CLOTHING   ☐ SCARS  ☐ MARKS  ☐ TATTOOS
115 ☐ ARRESTED ☐ WANTED

116 NAME (LAST, FIRST, MIDDLE): KNOX, ROBERT DEON JR
117 NICKNAME/ALIAS
118 RACE: ☐ W ☐ A  ☒ B ☐ I  ☐ M
119 SEX: ☒ M ☐ F
120 DOB: 0 9 2 6 7 9  121 AGE: 26

122 ADDRESS (STREET, CITY, STATE, ZIP): 1201 LAKE STREET MONTGOMERY AL. 36104
123 HGT: 506  124 WGT: 145  125 EYE: BRO  126 HAIR: BLK  127 COMPLEXION
128 PROBABLE DESTINATION
129 ARMED?: ☐ Y ☐ N ☐ UNK  130 WEAPON
131 CLOTHING   ☐ SCARS  ☐ MARKS  ☐ TATTOOS
132 ☐ ARRESTED ☐ WANTED

**WITNESSES**

| | 133 NAME (LAST, FIRST, MIDDLE) SEX, RACE, DOB | | 134 ADDRESS (STREET, CITY, STATE, ZIP) | 135 RES. PHONE | 136 BUS. PHONE |
|---|---|---|---|---|---|
| #1 | CARRELL, RACHEL | SEX ☐M ☒F  RACE ☒W ☐B ☐A ☐I  04 09 89 | 1904 REEVES ROAD ALEXANDER CITY AL. 35010 | (256)329-2111 | (256)234-5141 |
| #2 | | SEX ☐M ☐F  RACE ☐W ☐B ☐A ☐I | | ( ) | ( ) |
| #3 | | SEX ☐M ☐F  RACE ☐W ☐B ☐A ☐I | | ( ) | ( ) |
| #4 | | SEX ☐M ☐F  RACE ☐W ☐B ☐A ☐I | | ( ) | ( ) |

WITNESS #1 SSN | | | — | | | WITNESS #2 SSN | | | — | | | WITNESS #3 SSN | | | — | | | WITNESS #4 SSN | | | — | | |

**NARRATIVE**

137 SUSPECT # 3: BROADEN, ORLANDO JEROME; 573 N. UNION CIRCLE MONTGOMERY AL. 36104: BLACK MALE, DOB: 01-08-79 AGE 26; 507, 125, BLACK HAIR AND BROWN EYES. SOC: 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

ON 10-06-05 I WAS DISPATCHED TO WINN DIXIE IN REFERENCE TO A SCAM. UPON ARRIVAL I SPOKE WITH THE MANAGER OF WINN DIXIE MR. SANFORD. MR. SANFORD STATED THAT ONE OF THE SUSPECTS WENT TO CHECK OUT THROUGH MS. CARRELL'S CASH REGISTER. MS. CARRELL STATED THAT THE SUSPECT WANTED TO GET A GIFT CARD FOR $100 ALONG WITH SOME OTHER ITEMS. THE SUSPECT WENT TO PAY FOR THE ITEMS WITH A CHECK. MS. CARRELL STATED THAT THE CHECK WAS NOT FOR THE WHOLE AMOUNT AND THEN WROTE ANOTHER CHECK WHICH DID NOT CLEAR SO SHE CALLED THE FRONT MANAGER TO HER REGISTER. WHEN THE FRONT MANAGER GOT TO THE REGISTER SHE ASKED FOR THE SUSPECT'S ID. THE SUSPECT STATED THAT HER ID WAS IN THE CAR. THE FRONT MANAGER ASKED THE SUSPECT FOR THE GIFT CARD BACK AND THE SUSPECT GAVE HER A GIFT CARD BACK. THE FRONT STORE MANAGER TRIED TO VOID THE GIFT CARD SHE NOTICED THAT IT WAS NOT SAME GIFT CARD AND CALLED FOR THE STORE MANAGER. WHEN THE STORE MANAGER ( MR. SANFORD ) STARTED TO THE REGISTER THE SUSPECT GRABBED THE CHECK AND STARTED OUT THE DOOR. THE STORE MANAGER FOLLOWED THE SUSPECT OUT THE DOOR AND WATCHED HER GET IN THE CAR AND BACK UP FROM THE PARKING LOT TO MCDONALDS.

THEY ADVISED DISPATCH OF THE DIRECTION OF TRAVEL. THE VEHICLE WAS LOCATED AT THE RED LIGHT AT HWY 280 AND HWY 63. LT. RICHERSON STOPPED THE VEHICLE AND DETAINED THE SUSPECTS. INV. JONES WAS NOTIFIED AND CALLED TO THE SCENE. THE SCENE WAS TURNED OVER TO INV. JONES. THE THREE SUSPECT WHERE BROUGHT TO THE POLICE DEPARTMENT FOR QUESTIONING. WINN DIXIE WILL PROSECUTE.

CONTINUED ON SUPPLEMENT  Y ☐  N ☒
ASSISTING AGENCY ORI | ASSISTING AGENCY CASE # | SFX

I hereby affirm that I have read this report and that all information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying the agency if any stolen property or missing person hereby reported is returned

138 LOCAL USE
139 STATE USE

SIGNATURE _____

MULTIPLE CASES CLOSED  140 CASE #  141 SFX  142 CASE #  143 SFX  144 CASE #  145 SFX  146 ADDITIONAL CASES CLOSED NARRATIVE ☐Y ☐N

149 REPORTING OFFICER: BRADBERRY, W.  ID #: 265

150 ASSISTING OFFICER: 235,238,249,253  ID #

**ADMINISTRATIVE**

147 CASE STATUS: ☒ 1 - PENDING  ☐ 2 - INACTIVE  ☐ 3 - CLOSED

148 CASE DISPOSITION:
☐ 1 - CLEARED BY ARREST (JUV)
☐ 2 - CLEARED BY ARREST (ADULT)
☐ 3 - UNFOUNDED
☐ 5 - ADMINISTRATIVELY CLEARED

☐ 4 - EXCEPTIONAL CLEARANCE
☐ A - SUSPECT/OFFENDER DEAD
☐ B - OTHER PROSECUTION
☐ C - EXTRADITION DENIED
☐ D - LACK OF PROSECUTION
☐ E - JUVENILE, NO REFERRAL
☐ F - DEATH OF VICTIM

ENTERED ACIC/NCIC DATE: ☐Y ☐N

151 SUPERVISOR APPROVAL  ID #: 235   142 WATCH CMDR  ID #

**Exhibit B**
**Affidavit of Blake Jennings**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BERTHA ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:06-cv-00772-WKW-DRB** |
| | ) | |
| **TALLAPOOSA COUNTY** | ) | |
| **JAIL STAFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>AFFIDAVIT OF BLAKE JENNINGS</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF TALLAPOOSA** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Blake Jennings, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Blake Jennings.  I am over the age of nineteen and competent to make this affidavit.  I have personal knowledge of the matters set forth in this affidavit.

2.    I have been employed by the Tallapoosa County Sheriff's Department since 1998. I served as an Investigator from 1998 until I became the Jail Administrator on March 19, 2005.  I am a graduate of the Corrections Academy.

3.    I am familiar with the Plaintiff due to her incarceration in the Tallapoosa County Jail.

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.    On April 22, 2006, Inmate Missy Eason, who was housed in cell A-2, got into a fight with Inmate Kristy Baker, who was also housed in A-2. Eason was moved to cell A-1 at this time. On May 30, 2006, Eason was moved to cell A-2 because she was having problems with an inmate in cell A-1. Kristy Baker was gone from the jail by this time. A-1 and A-2 are the two female cells at the Tallapoosa County Jail.

6.    It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

7.    Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

8.    Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

9.    Inmates are housed separately from any known enemies.

10.    An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger. Each cell is equipped with an intercom, so an inmate may make such a request at any time.

11.    All Tallapoosa County Jail officers understand that such a request is to be taken seriously. In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, that inmate will be moved immediately.

12.     Neither the Plaintiff nor anyone else had ever made me aware that the Plaintiff had been threatened by Eason or felt that she was in danger because she was housed with Eason. The Plaintiff never asked me to separate her from Eason. Further, I was never aware of any problems between the Plaintiff and Eason or history of animosity or fighting between Plaintiff and Eason until after the incident made the basis of the Complaint took place.

13.     Had the Plaintiff made any of the officers aware that she was threatened by Eason, she would have been separated from Eason immediately per our policy.

14.     At the time of the incident between Allen and Eason, space was available in cells B6 or B7 to move these inmates had either requested to be separated. Cells B6 and B7 are isolation cells that can house up to two inmates.

15.     It is the policy of the Tallapoosa County Jail that, anytime an assault takes place in the Tallapoosa County Jail, the responding officers are to ensure that any medical needs are met, separate the inmates involved, and call an investigator from the Tallapoosa County Sheriff's Department to investigate the incident. The responding officers must also complete an incident report regarding the matter.

16.     Per Jail policy, an investigator from the Tallapoosa County Sheriff's Department was called in to investigate the incident.

17.     I never received a grievance from the Plaintiff regarding this incident.

18.     Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates

are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File. Inmate grievances are also logged into a database kept on the jail's computer system. Upon my review of the Plaintiff's inmate file and the jail computer database, there is no grievance filed about the incident made basis of her Complaint.

19.     Inmates can appeal the outcome of a grievance to the Jail Administrator, then an appeal may be made to the Chief Deputy, and finally to the Sheriff. I have received no appeal of a grievance from the Plaintiff.

20.     After Plaintiff was transferred to Tutwiler Women's Prison, I received no order from any court to transport the Plaintiff to a hearing. When Plaintiff was transferred to Tutwiler, she was no longer within the custody of the Tallapoosa County Sheriff and the Tallapoosa County Sheriff had no responsibility or right to transport her anywhere without a court order.

21.     I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

22.     Attached to the Special Report are true and accurate documents contained in the Plaintiff's jail file. I am the custodian of such documents, which were kept by me in the ordinary course of my business.

23.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_Blake Jennings_

BLAKE JENNINGS

**SWORN TO** and **SUBSCRIBED** before me this 24 day of October, 2006.

_Marlene Adams_

NOTARY PUBLIC
My Commission Expires: _____ MY COMMISSION EXPIRES JULY 18, 2008

# Exhibit C
# Grand Jury Indictment

Grand Jury No. 123, 124, 125

A TRUE BILL:--

_Steve R. Grissel_
Foreman Grand Jury

Filed in open Court on the 23rd day of _____, 2006.

_____
in the presence of the Grand Jury.

_____ Clerk

Presented to the presiding Judge in open Court by the Foreman of the Grand Jury, in the presence of ____ other Grand Jurors and filed by order of the Court this 23rd day of _____, 2006.

_____ Clerk

Bail fixed at $ _____ (EACH)

this 2/5 day of _____, 2006.

_____
Judge Presiding

Robert Knox #5,200. TOTAL
Bertha Allen $10,200. TOTAL

3888 APRIL Street
Montgomery, AL
AIF 5-04-58
42780-08224
334-281-6720

Houston County Jail

---

No. _____

THE STATE OF ALABAMA
TALLAPOOSA COUNTY
CIRCUIT COURT
SPRING TERM 2006
THE STATE
VS.

ROBERT DEON KNOX, ALIAS ROBERT

KNOX, AND BERTHA YVONNE ALLEN,

ALIAS BERTHA ALLEN

INDICTMENT

RECEIVING STOLEN PROPERTY THIRD
DEGREE,
POSSESSION OF A FORGED INSTRUMENT
SECOND DEGREE

No Prosecutor

WITNESSES:

Danny Sanford

Investigator Keith Jones

---

THE STATE OF ALABAMA
TALLAPOOSA COUNTY
Circuit Court, Spring Term 2006

To the Sheriff of said County:
I hereby certify that this is a true and correct copy of the Indictment presented to the Court by the Grand Jury of said County against

NAMED DEFENDANT

rged with Refer to Face of Indictment together with all endorsements on said Indictment, and that the trial is set for
April 10, 2006.

Arraignment- Feb. 14, 2006 at 9 AM

or

his counsel.

Witness my hand, this Jan. 23, 2006.

FRANK LUCAS , Clerk.

I hereby certify that I have received above
ted copy of Indictment from the Circuit
Court Clerk of said County and served same on

Bertha Yvonne Allen

at 12:00 o'clock __ m., 3-21-06, 2006.

_____ Sheriff

_____ D.S.

INDICTMENT

# THE STATE OF ALABAMA, TALLAPOOSA COUNTY
### FOR THE WEST SIDE OF THE TALLAPOOSA RIVER, AT ALEXANDER CITY

## CIRCUIT COURT, SPRING TERM 2006

1. The Grand Jury of said County charge that before the finding of this Indictment Robert Deon Knox, alias Robert Knox, and Bertha Yvonne Allen, alias Bertha Allen, whose true names are otherwise unknown to the Grand Jury, did intentionally receive, retain, or dispose of stolen property, to-wit: one (1) American Express Gift Card, the property of Winn Dixie, Inc., a corporation, of a value less than five hundred dollars ($500.00), knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation of Section 13A-8-19 of the Code of Alabama, against the peace and dignity of the State of Alabama.

2. The Grand Jury of said County further charge that before the finding of this Indictment Bertha Yvonne Allen, alias Bertha Allen, whose true name is otherwise unknown to the Grand Jury, did, with intent to defraud, possess or utter a forged instrument as follows:



having knowledge that said instrument was forged, in violation of Section 13A-9-6 of the Code of Alabama, against the peace and dignity of the State of Alabama.

_____
District Attorney of the Fifth Judicial Circuit

# Exhibit D
# Tallapoosa County Jail In-processing Checklist



# TALLAPOOSA COUNTY JAIL

## IN-PROCESSING CHECK LIST

Inmates Name: _Allen Beetha_    Name ID: _41012_    Date In: _3·21-06_

Booking Number: _D6-000478_    Time In: _1120_    Shift: _B1_

_____ 1. Medical screening completed. Notify nurse of any major problems.

_____ 2. Property Issued. (Explain to inmate about the responsibility of property.)

_____ 3. Finger printing. Livescan.

_____ 4. Photos.

_____ 5. Arrest report, IO reports, Arrest Authentication sheet in file.

_____ 6. Bond Set, Purge amount set, and inmate has been informed. Comments:_____

_____

_____ 7. All copies of reports made and copies and originals in appropriate location.

_____ 8. All property and valuables have been secured in appropriate location.

_____ 9. Any cash inmate request to be transferred to commissary account has been accounted for and
placed in appropriate location.

_____ 10. NCIC Check completed:

       ✓ No wants or warrants

       _____ Wanted for:_____

       by: _Peters_____

_Dayhty_____    _3·21-06   12:00_____

    Booking Officer's Signature        Date/Time Booking Completed

_Sgt. Williams_____
    Supervisor Reviewed

*Supervisor must review all bookings prior to filing record.

**CORRECTIONS**

**Exhibit E**
**Order from Tallapoosa County Circuit Court**
**dated March 8, 2006**

IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
AT ALEXANDER CITY

STATE OF ALABAMA          )
                                   )
VS.                           )         CASE NO.CC_____
                                 )
BERTHA YVONNE ALLEN,     )
      Defendant           )

## O R D E R

      The Sheriff is hereby ordered to obtain custody of the above-named defendant from the Department of Corrections of this State and return him/her to this County for hearing on the **23rd** day of **March, 2006, at 9:00 A.M.** and thereafter return him/her to the Department of Corrections; and the Department of Corrections is ordered to deliver custody of the above-named defendant to the Sheriff of this County or any of his lawful deputies for execution of this order.

      DONE this the ___8___ day of ___March___, 2006.

                                              Circuit Judge

3-09-06
DA
TCSO
DOC

*MAR 2006*
*RECEIVED*
*FRANK LUCAS*
*CIRCUIT CLERK*

*Houston County Jail*

*# 139004*

*5-24-58*

*Female*

*Tuesday*

# Exhibit F
# Plea Agreement

# IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
## AT ALEXANDER CITY

STATE OF ALABAMA          )

VS.                     )

                         ) CASE NO.  CC-06-109

BERTHA YVONNE ALLEN     )

## PLEA AGREEMENT

After discussion and negotiation between the parties, after a full EXPLANATION of rights has been given to the DEFENDANT as evidenced by the attached Explanation of Rights form, and after such disclosure of information between the parties as each deems sufficient, it is agreed in this case, subject to acceptance by the Court, that:

1.    **Defendant will enter a plea of guilty:**
    ( ) As charged in the COMPLAINT/INFORMATION/INDICTMENT.
    XX To the charge of _Possession of Forged Instrument 2nd degree_
    ( ) To Violation of the Youthful Offender Act.
    XX The Prosecutor will move for dismissal with prejudice of all other offenses charged in the complaint/information/indictment.

2.  XX The Prosecutor will recommend to the Court that the Defendant be given a sentence of _fifteen (15) years concurrent with any other sentence she may have at this time._

3.  ( ) The Prosecutor will take no position as far as probation is concerned.
    ( ) The Prosecutor opposes probation in this case.
4.  ( ) **Sentence Enhancements:**
    (X) **Habitual Offender Act.** The State can prove and the defendant admits to _3+_ prior felony convictions.
    ( ) 13A-12-250 - Sale within a three mile radius of a school.
    ( ) 13A-12-270 - Sale within a three mile radius of a public housing project.
5.  ( ) **Demand Reduction Assessment Act.**
    ( ) 13A-12-281 First time drug offender - $1,000.00 FINE.
    ( ) 13A-12-281 Second time drug offender - $2,000.00 FINE
    ( ) Act No. 733 Forensic Sciences Drug Trust Fund - $100.00
    ( ) Alabama Head Injury Foundation Fund - $250.00
    ( ) Alabama Chemical Testing Training and Equipment Trust Fund - $100.00.
    XX Defendant is to pay $50.00 to Victims Compensation Fund Award plus all Court Costs.
    ( ) Defendant to pay $25.00 to Victims Compensation Fund Award plus all Court Costs.
    XX Defendant will reimburse the State of Alabama and/or Tallapoosa County for any medical bills incurred while in custody.
    XX Defendant will reimburse the State of Alabama any amount paid by the State if his/her Attorney was Court appointed.
    ( ) All items seized in connection with this case shall be condemned and forfeited to the investigating agency for proper disposal or destruction.
6.  XX My attorney has properly represented me and I am satisfied with his/her representation in this case.
7.  XX Defendant waives the right to appeal this case.
8.  ( ) Any other matters agreed upon:_____

9.  ( ) Restitution of $_____ to be paid to the following: _____

Date:  _4/13/06_

_____
Signature of Defendant

_____
Signature of Defendant's Counsel

_____
Signature of Prosecutor

Having reviewed the above agreement entered into by the Defendant and the Prosecutor, the Court hereby:

(✓) Accepts the Plea Agreement. The disposition provided herein will be embodied in the judgment and sentence.

( ) Rejects the Plea Agreement.

## NOTICE TO DEFENDANT

Since the agreement has been rejected, you may withdraw your offer to the Prosecutor to plead guilty to the charged offense. If you do decide to plead guilty, the disposition of the case may be either more or less favorable to you than contemplated in the agreement.
    The Court will allow the Prosecutor to change his recommendation and the parties may submit further plea agreements for the Court's Consideration.

Date: _4-13-06_

_____
Circuit Judge

RECEIVED
APR 2006
FRANK LUCAS
CIRCUIT CLERK

**Exhibit G**
**Tallapoosa County Jail Out-processing Checklist**



# TALLAPOOSA COUNTY JAIL

## OUT-PROCESSING CHECK LIST

Inmates Name: _Allen Bertha_    Name ID: _41012_    Date Out: _6/16/06_

Booking Number: _06-00078_    Time Out: _0730_    Shift: _B-1_

___✓___ 1. Manner in which inmate is being released has been confirmed.

___✓___ 2. NCIC Check completed:

_____ No wants or warrants

_____ Wanted for:_____

_____ by: _____

___✓___ 3. Inmate returned all issued property, spillman updated.

___✓___ 4. Inmate received and signed for all his/her property, spillman updated.

___✓___ 5. Bond completed and copies/originals in appropriate location.

___✓___ 6. Copy of bond/receipt/order has been placed in inmates record.

___✓___ 7. Cash Account: Inmate received commissary funds upon release: Yes/No

_____ If no explain: _____

___✓___ 8. Ensure all data has been updated in spillman, bonds, holds, property, etc.

_Sgt. Williams_                    _6-16-06 / 0730_

Booking Officer's Signature            Date/Time Release Completed

_Sgt. Williams_

Supervisor Reviewed

*Supervisor must review all releases prior to filing record.

**CORRECTIONS**

# Exhibit H
# Tallapoosa County Sheriff Department Interview
# Sheet signed by Plaintiff

**TALLAPOOSA COUNTY**
**SHERIFF DEPARTMENT**

INTERVIEW SHEET

| 1. NAME (Last, First, Middle) Allen, Bertha Yvonne | | 2. Case Number 060500312 |
|---|---|---|
| 3. ALIANS(ES) / NICKNAME(S) | 4. DATE 5/30/06  S T S M W F  TIME 2:30 PM | 5. PLACE OF INTERVIEW TCSO |
| 6. HOME ADDRESS ⬛ 6121 Jennifer Lane, Montgomery, AL | | 7. HOME PHONE Sister 334 281-6720 |
| 8. NAME AND ADDRESS OF EMPLOYER | | 9. BUSINESS PHONE |

| 10. RACE B | 11. SEX F | 12. DOB 5/24/58 | 13. POB Detroit | 14. SSN 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 | 15. DLN NA |
|---|---|---|---|---|---|

16. STATEMENT

My name is Bertha Allen. I am a 48 year old black female. I am currently incarcerated in the Tallapoosa County Jail. I am assigned to cell A-2. Around 2:00 pm this afternoon I came back into my cell after talking to officer Cowart about Missy Eason. I had told him that Missy was a violent person and that she was going to fight with someone. When I came back in Missy started running her mouth, telling me and the other girls to quit talking about her. I told her that we weren't talking about her and then we got into a verbal arguement. The next thing I know Missy is scratching my eye and face with her fingernails. I grabbed her by the hair to get her off of me, someone from cell A-1 pushed the button and the officers came. They took Missy out of the cell.

| 17. ACJIC / NCIC CHECK YES ( ) NO ( ) | 18. FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY PHOTOGRAPHED YES ( ) NO ( ) BY WHAT AGENCY | *Bertha Allen* |
|---|---|---|
| 19. SUBJECT VICTIM ✓ WITNESS ( ) RIGHTS GIVEN BY: | 20. DATE ENDED 5/30/06    TIME ENDED 2:45  AM PM | 21. INTERVIEW CONDUCTED BY *Beverly Ars* |
| | | 22. PAGE ( OF ) 23. EXHIBIT NO. |

# TALLAPOOSA COUNTY - SHERIFF'S DEPARTMENT

## WAIVER OF COUNSEL

PLACE ___TCSO___

DATE ___5/30/06___

TIME ___3:20 pm.___

Before we ask you any questions, you must understand your rights:

*ME*    1. You have the right to remain silent.

*ME*    2. Anything you say can and will be used against you in court.

*ME*    3. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

*ME*    4. If you cannot afford a lawyer, one will be appointed without cost to you before any questioning if you wish.

*ME*    5. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time you wish.

## WAIVER OF RIGHTS

I have been advised of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercision of any kind has been used against me.

Signed ___Mindy Evans___

Date ___5-30 06___

Witness ___Beverly Drgo___

Witness _____

**TALLAPOOSA COUNTY**
**SHERIFF DEPARTMENT**

INTERVIEW SHEET

| 1. NAME (Last, First, Middle) | | | | | 2. Case Number |
|---|---|---|---|---|---|
| Eason, Missy Michelle | | | | | |

| 3. ALIANS(ES) / NICKNAME(S) | 4. DATE 5/30/06 | S (T) S M W F | TIME 3:25 PM | 5. PLACE OF INTERVIEW TCSO |
|---|---|---|---|---|

| 6. HOME ADDRESS | 7. HOME PHONE |
|---|---|
| 110 Sawmill Dr. Dadeville, AL 36853 | 825-0475 |

| 8. NAME AND ADDRESS OF EMPLOYER | 9. BUSINESS PHONE |
|---|---|

| 10. RACE B | 11. SEX F | 12. DOB 10/20/83 | 13. POB Tallapoosa | 14. SSN 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 | 15. DLN NA |
|---|---|---|---|---|---|

**16. STATEMENT**

My name is Missy Eason. I am a 22 year old black female who can read and write. I have been advised of my rights and I understand my rights. I am giving this statement voluntarily and of my own free will. Sometime this afternoon after 1:00 pm I was move to cell A-2 in the Tallapoosa County Jail. When I went in there was some things said about me and Bertha Allen went out and talked to Cowart. When she came back in she told me that she had told Cowart she was going to wipe my ass. She started talking to the other girls and saying she didn't want me in the cell and I told her I didn't want to be there either. We started arguing back and forth. The next thing I know Bertha hit me in the back of the head and that's when we started fighting. I hit her back and we ended up in the shower. I don't know

| 17. ACJIC / NCIC CHECK YES ( ) NO ( ) | 18. FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY PHOTOGRAPHED YES ( ) NO ( ) BY WHAT AGENCY | |
|---|---|---|

| 19. SUBJECT ( ) | VICTIM ( ) | WITNESS ( ) | 20. DATE ENDED | TIME ENDED AM PM | 21. INTERVIEW CONDUCTED BY |
|---|---|---|---|---|---|
| RIGHTS GIVEN BY: | | | | | |

| 22. PAGE ____ OF ____ |
|---|
| 23. EXHIBIT NO. |

Tallapoosa County
Sheriff Dept.



**BUREAU OF INVESTIGATION**



SUPPLEMENT SHE

| 1. SUBJECT OR TITLE | 2. Case Number |
|---|---|

who pushed the button. When officer Cowart
came we were still fighting. Cowart got
me and took me out of the cell. I
know that I have an anger problem
but she should not have hit me. This is
a true statement. J. McEam

789

| 3. PAGE ____ OF ____ |
|---|
| 4. EXHIBIT NO. ____ |

**TALLAPOOSA COUNTY**
**SHERIFF DEPARTMENT**

INTERVIEW SHEET

| 1. NAME (Last, First, Middle) WHITAKER, DELBERAH Dianne | | | | | 2. Case Number |
|---|---|---|---|---|---|
| 3. ALIANS(ES) / NICKNAME(S) | 4. DATE 5-30-06 | S T T S M W F | TIME 3:01 | 5. PLACE OF INTERVIEW TCSO | |
| 6. HOME ADDRESS 561 S STREET ALEX. CITY AL | | | | 7. HOME PHONE 234-2326 | |
| 8. NAME AND ADDRESS OF EMPLOYER | | | | 9. BUSINESS PHONE | |

| 10. RACE B | 11. SEX F | 12. DOB 1-17-56 | 13. POB Alex City AL | 14. SSN 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 | 15. DLN |
|---|---|---|---|---|---|

16. STATEMENT

My name is Delberah Whitaker. I am a 50 year old female who can read and write. Today Around 2:00 pm Missy Eason was put in cell A-2. When they brought her in, Bertha asked Cowart if she could speak to him. When Bertha came back in the cell missy called berth an Ugly Bitch, then a mother fucker. Bertha Ignored her. Then Missy started fussing that she didnt want to be in the cell anyways. Missy kept on fussing. Bertha told Missy that this was a peaceful cell and there wasnt any mess in there. Then missy and Bertha started fighting. There is always something going on with Missy. she is always starting trouble. *Delberah Whitaker*

| 17. ACJIC / NCIC CHECK YES ( ) NO ( ) | 18. FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY PHOTOGRAPHED YES ( ) NO ( ) BY WHAT AGENCY | | |
|---|---|---|---|
| 19. SUBJECT ( ) VICTIM ( ) WITNESS (✓) RIGHTS GIVEN BY: | 20. DATE ENDED 5-30-06 | TIME ENDED 3:14 AM PM | 21. INTERVIEW CONDUCTED BY D MCWaters |

22. PAGE 1 OF 1
23. EXHIBIT NO.

**TALLAPOOSA COUNTY**
**SHERIFF DEPARTMENT**

INTERVIEW SHEET

| 1. NAME (Last, First, Middle) | | | 2. Case Number |
|---|---|---|---|
| McDaniel, Jessica Georgette | | | |

| 3. ALIANS(ES) / NICKNAME(S) | 4. DATE 5/30/06 | S T T S PM M W F TIME 2:50 | 5. PLACE OF INTERVIEW TCSO |
|---|---|---|---|

| 6. HOME ADDRESS 538 Oak Hill Dr. Alexander City, AL | 7. HOME PHONE (256)329-9624 |
|---|---|

| 8. NAME AND ADDRESS OF EMPLOYER | 9. BUSINESS PHONE |
|---|---|

| 10. RACE W | 11. SEX F | 12. DOB 9/25/83 22 | 13. POB Georgia | 14. SSN 254-47-304B | 15. DLN |
|---|---|---|---|---|---|

16. STATEMENT

My name is Jessica McDaniel. I am a 22 year old white female. I am currently in jail at the Tallapoosa County ~~Jail~~ Jail. I am assigned to cell A-2. Sometime around 2:00 pm today Missy Eason was moved to my cell. Bertha Allen went out to talk to Cowart. As soon as Bertha came back in the cell Missy started arguing with Bertha and calling her an ugly Bitch and saying she didn't want to be in the cell with her. ~~Missy~~ Bertha didn't say a lot back to her. When ~~Missy~~ Bertha got up that's when Missy grabbed Bertha in the face and scratched her eye. Bertha grabbed Missy to hold her or get her off her. Someone in cell A-1 pushed the button and the officers came in and took Missy out of the cell. Jessica McDaniel

| 17. ACJIC / NCIC CHECK YES ( ) NO ( ) | 18. FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY PHOTOGRAPHED YES ( ) NO ( ) BY WHAT AGENCY | |
|---|---|---|

| 19. SUBJECT ( ) VICTIM ( ) WITNESS N RIGHTS GIVEN BY: | 20. DATE ENDED 5/30/06 TIME ENDED AM PM | 21. INTERVIEW CONDUCTED BY Beverly Argo |
|---|---|---|
| | | 22. PAGE OF |
| | | 23. EXHIBIT NO. |

**TALLAPOOSA COUNTY
SHERIFF DEPARTMENT**

INTERVIEW SHEET

| 1. NAME (Last, First, Middle) | | | | 2. Case Number |
|---|---|---|---|---|
| Fuller, Teresa | | | | |

| 3. ALIANS(ES) / NICKNAME(S) | 4. DATE 5/30/06 | S (T) S M W F | TIME PM 3:00 | 5. PLACE OF INTERVIEW TCSO |
|---|---|---|---|---|

| 6. HOME ADDRESS 1234 County Rd. 40, JacksonsGap, AL | 7. HOME PHONE 256-825-5017 |
|---|---|

| 8. NAME AND ADDRESS OF EMPLOYER | 9. BUSINESS PHONE |
|---|---|

| 10. RACE W | 11. SEX F | 12. DOB 4/28/72  34 | 13. POB Tallapoosa | 14. SSN 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 | 15. DLN |
|---|---|---|---|---|---|

16. STATEMENT

My name is Teresa Fuller. I am a 34 year old female. Currently I am incarcerated in the Tallapoosa County Jail. I am assigned to cell A2. Around 2:00 pm this afternoon Missy, I don't know her last name, was moved to cell A2. When she came in ChiChi went out and talked to Cowart. I don't know ChiChi's name. When ChiChi came back in Missy started talking to her and arguing with her. ChiChi was telling us that she had talked to Cowart about Missy. Missy told her she didn't want to be in our cell and she called ChiChi a ugly Bitch. ChiChi said she would be that for the day. Missy called ChiChi a motherfucker and ChiChi got up and said she was that motherfucker and that's when they went at it and Missy scratched ChiChi in the eye with her fingernails. I guess someone across the hall pushed the button an the officers came and took Missy out of the cell.

| 17. ACJIC / NCIC CHECK YES ( ) NO ( ) | 18. FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY PHOTOGRAPHED YES ( ) NO ( ) BY WHAT AGENCY | *Teresa Fuller* |
|---|---|---|

| 19. SUBJECT ( ) | VICTIM ( ) | WITNESS ✓ | 20. DATE ENDED 5/30/06 | TIME ENDED 3:13 AM (PM) | 21. INTERVIEW CONDUCTED BY Beverly Arso |
|---|---|---|---|---|---|
| RIGHTS GIVEN BY: | | | | | 22. PAGE 1 OF 1 |
| | | | | | 23. EXHIBIT NO. |

**TALLAPOOSA COUNTY**
**SHERIFF DEPARTMENT**

INTERVIEW SHEET

| 1. NAME (Last, First, Middle) | | 2. Case Number |
|---|---|---|
| KRAUSE, ELIZABETH Lorraine | | |

| 3. ALIAS(ES) / NICKNAME(S) | 4. DATE | S T T S / M W F | TIME | 5. PLACE OF INTERVIEW |
|---|---|---|---|---|
| HUDDY | 5-30-06 | | 2:46pm | TCSD |

| 6. HOME ADDRESS | | 7. HOME PHONE |
|---|---|---|
| 742 13th AVE. ALEX. CITY AL. | | 250-9176 |

| 8. NAME AND ADDRESS OF EMPLOYER | 9. BUSINESS PHONE |
|---|---|
| | CHUCK |

| 10. RACE | 11. SEX | 12. DOB | 13. POB | 14. SSN | 15. DLN |
|---|---|---|---|---|---|
| W | F | 7-29-46 | Montgomery Al | 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 | |

**16. STATEMENT**

My name is ELIZABETH Krause. I am a 59 year old female who can read and write. TODAY sometime After lunch Bertha, Jessica, Johnny and Debra were playing cards. Missy Eason was just moved in the cell with Missy A little before then. Missy was mouthing off at Bertha because Bertha had went out of the cell (A-2) to talk to officer Cowart earlier. Missy was saying nasty things to Bertha because she thought Bertha had talked to Cowart about her. The next thing I know Missy clawed Bertha in the eye. Bertha tried to pull Missy off her, but Missy wouldn't quit. She started swinging at Bertha. Bertha had to fight back to defend herself. Someone in A pushed the button to get the officers to come. When the officers came they took Missy out, then came back and took Bertha to the nurse. Elizabeth Krause

| 17. ACJIC / NCIC CHECK | 18. FINGERPRINTED YES ( ) NO ( ) BY WHAT AGENCY | |
|---|---|---|
| YES ( ) NO ( ) | PHOTOGRAPHED YES ( ) NO ( ) BY WHAT AGENCY | |

| 19. SUBJECT ( ) | VICTIM ( ) | WITNESS (W) | 20. DATE ENDED | TIME ENDED | 21. INTERVIEW CONDUCTED BY |
|---|---|---|---|---|---|
| RIGHTS GIVEN BY: | | | 5-30-06 | 2:57 AM/PM | ms waters |

| 22. PAGE 1 OF 1 |
|---|
| 23. EXHIBIT NO. |

**Exhibit I**
**Affidavit of Sheriff Jimmy Abbett**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| BERTHA ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06-cv-00772-WKW-DRB |
| | ) | |
| TALLAPOOSA COUNTY | ) | |
| JAIL STAFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF JIMMY ABBETT

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF TALLAPOOSA | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Sheriff Jimmy Abbett, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Jimmy Abbett. I am over the age of nineteen and competent to make this affidavit. I have personal knowledge of the matters set forth in this affidavit.

2. I am the duly elected Sheriff of Tallapoosa County, Alabama. I have served as Sheriff since 1995. Prior to serving as Sheriff, I retired from the Alabama Bureau of Investigation where I served as an Investigator.

3. I am familiar with the Plaintiff only due to her being incarcerated in the Tallapoosa County Jail. I have no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.

1

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.    I have delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to the Jail Administrator Blake Jennings. As Sheriff of Tallapoosa County, I am responsible for promulgating the policies governing the Jail.

6.    It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

7.    Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

8.    Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

9.    Inmates are housed separately from any known enemies.

10.    An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger. Each cell is equipped with an intercom, so an inmate may make such a request at any time.

11.    All Tallapoosa County Jail officers understand that such a request is to be taken seriously. In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, that inmate will be moved immediately.

12.    Had the Plaintiff made any of the officers aware that she was threatened by Inmate Eason, per my policy, she would have been separated from Eason immediately.

13.    I was not present at the Jail at the time of the incident made the basis of the Plaintiff's Complaint.

2

14.    Neither the Plaintiff nor anyone else had ever made me aware that the Plaintiff had been threatened by Eason or felt that she was in danger because she was housed with Eason. The Plaintiff never asked me to separate her from Eason.

15.    It is the policy of the Tallapoosa County Jail that anytime an assault takes place in the Tallapoosa County Jail the responding officers are to ensure that any medical needs are met, separate the inmates involved, and call an investigator from the Tallapoosa County Sheriff's Department to investigate the incident. The responding officers must also complete an incident report regarding the matter.

16.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or his Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.

17.    Inmates can appeal the outcome of a grievance to the Jail Administrator, then to the Chief Deputy, and finally to the Sheriff. I have received no appeal of a grievance from Plaintiff.

18.    After Plaintiff was transferred to Tutwiler Women's Prison, I received no order from any court to transport the Plaintiff to a hearing. When Plaintiff was transferred to Tutwiler, she was no longer within the custody of the Tallapoosa County Sheriff and the Tallapoosa County Sheriff had no responsibility or right to transport her anywhere.

19.    I have complied with all policies and procedures of the Tallapoosa County Jail.  I am not aware of nor have I authorized or allowed any deviation from said policies and procedures without a court order.

20.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
JIMMY ABBETT

**SWORN TO** and **SUBSCRIBED** before me this 24 day of October, 2006.


NOTARY PUBLIC
My Commission Expires: _____

MY COMMISSION EXPIRES JULY 18, 2008

4

**Exhibit J**
**Affidavit of Kenny Sherrer**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BERTHA ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. **3:06-cv-00772-WKW-DRB** |
| | ) | |
| **TALLAPOOSA COUNTY** | ) | |
| **JAIL STAFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF KENNY SHERRER

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF TALLAPOOSA** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Kenny Sherrer, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Kenny Sherrer. I am over the age of nineteen and competent to make this affidavit. I have personal knowledge of the matters set forth in this affidavit.

2.      I am employed as the Chief Deputy for the Tallapoosa County Sheriff. I was so employed during Ms. Allen's incarceration at the Tallapoosa County Jail.

3.      I am familiar with the Plaintiff due to her being incarcerated in the Tallapoosa County Jail.

4.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.      I never received a grievance from the Plaintiff regarding Ms. Eason.

6.      It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

7.      Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

8.      Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

9.      Inmates are housed separately from any known enemies.

10.     An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger. Each cell is equipped with an intercom, so an inmate may make such a request at any time.

11.     All Tallapoosa County Jail officers understand that such a request is to be taken seriously. In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, per policy and procedure, that inmate will be moved immediately.

12.     Neither the Plaintiff nor anyone else had ever made me aware that the Plaintiff had been threatened by Eason or felt that she was in danger because she was housed with Eason. The Plaintiff never asked me to separate her from Eason. Further, I was never aware of any

2

problems between the Plaintiff and Eason until after the incident made the basis of the Complaint took place.

13.    It is the policy of the Tallapoosa County Jail that, anytime an assault takes place in the Tallapoosa County Jail, the responding officers are to ensure that any medical needs are met, separate the inmates involved, and call an investigator from the Tallapoosa County Sheriff's Department to investigate the incident. The responding officers must also complete an incident report regarding the matter.

14.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.

15.    Inmates can appeal the outcome of a grievance to the Jail Administrator, then an appeal may be made to the Chief Deputy, and finally to the Sheriff. I have received no appeal of a grievance from the Plaintiff.

16.    I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

3

17.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


_Kenny Sherrer_
KENNY SHERRER


**SWORN TO** and **SUBSCRIBED** before me this 24 day of October, 2006.


_Marianne Adams_
NOTARY PUBLIC
My Commission Expires: MY COMMISSION EXPIRES JULY 18, 2008

4

**Exhibit K**
**Affidavit of Jason Cowart**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **BERTHA ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-cv-00772-WKW-DRB** |
| | ) | |
| **TALLAPOOSA COUNTY** | ) | |
| **JAIL STAFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF JASON COWART

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF TALLAPOOSA** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Jason Cowart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Jason Cowart. I am over the age of nineteen and competent to make this affidavit. I have personal knowledge of the matters set forth in this affidavit.

2.    I am employed as a Corrections Officer at the Tallapoosa County Jail with the rank of Lieutenant. I am a graduate of the Corrections Academy.

3.    I am familiar with the Plaintiff due to her being incarcerated in the Tallapoosa County Jail.

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.      On May 30, 2006, just before Inmate Missy Eason was moved into cell A-2, which housed the Plaintiff, Ms. Allen asked if she could speak with me. Ms. Allen was taken to my office so that she could speak to me. Ms. Allen stated to me that Missy Eason "has a mouth" and was "violent." She did not request that she be moved from cell A-2. Instead, Ms. Allen stated that she wanted Ms. Eason moved to an isolation cell because Ms. Allen was "tired of her mouth."

6.      I told Ms. Allen that Ms. Eason would not be moved unless she had done something wrong. Ms. Allen did not state that Ms. Eason had threatened her. In fact, Ms. Allen specifically stated that she was not scared of Ms. Eason. Ms. Allen stated "if she [Ms. Eason] starts talking, I'm not going to listen."

7.      This is the only time that Ms. Allen has ever made any statement to me concerning Missy Eason. If Ms. Allen had indicated that she was threatened or otherwise in danger, I would have moved her to a different cell. Before the incident between Plaintiff and Ms. Eason I was unaware of any previous arguments or fights between these two inmates and was unaware of any history of animosity between these two inmates.

8.      Per Jail policy, an investigator from the Tallapoosa County Sheriff's Department was called in to investigate the altercation between Ms. Allen and Ms. Eason after the incident took place.

9.      I responded to the fight between Ms. Eason and Ms. Allen. After the investigation it was unable to be determined who started the fight.

10.     I never received a grievance from the Plaintiff regarding this incident.

11.     It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

2

12.    Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

13.    Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

14.    Inmates are housed separately from any known enemies.

15.    An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger. Each cell is equipped with an intercom, so an inmate may make such a request at any time.

16.    All Tallapoosa County Jail officers understand that such a request is to be taken seriously. In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, per policy and procedure, that inmate will be moved immediately.

17.    Had the Plaintiff made me aware that she was threatened by Eason, she would have been separated from Eason immediately. However, despite having the opportunity, the Plaintiff never made me aware of such.

18.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.

3

19.    I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

20.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____

JASON COWART

**SWORN TO** and **SUBSCRIBED** before me this 25 day of October, 2006.

_____

NOTARY PUBLIC    MY COMMISSION EXPIRES JULY 16, 2008
My Commission Expires: _____

4

# Exhibit L
# Affidavit of Patricia Guthrie

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **BERTHA ALLEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:06-cv-00772-WKW-DRB** |
| ) | |
| **TALLAPOOSA COUNTY** ) | |
| **JAIL STAFF, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## AFFIDAVIT OF PATRICIA GUTHRIE

| | |
|---|---|
| **STATE OF ALABAMA** ) | |
| ) | |
| **COUNTY OF TALLAPOOSA** ) | |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Patricia Guthrie, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Patricia Guthrie.  I am over the age of nineteen and competent to make this affidavit.  I have personal knowledge of the matters set forth in this affidavit.

2.      I am employed as a Corrections Officer at the Tallapoosa County Jail with the rank of Sergeant.  I am a graduate of the Corrections Academy.  I was employed in this capacity during Ms. Allen's incarceration at the Tallapoosa County Jail.

3.      I am familiar with the Plaintiff due to her being incarcerated in the Tallapoosa County Jail.

4.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.    I never received a grievance from the Plaintiff regarding Ms. Eason.  Before the incident made basis of Plaintiff's complaint, I was aware of no animosity or history of fighting between Plaintiff and Ms. Eason.

6.    It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

7.    Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

8.    Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

9.    Inmates are housed separately from any known enemies.

10.    An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger.  Each cell is equipped with an intercom, so an inmate may make such a request at any time.

11.    All Tallapoosa County Jail officers understand that such a request is to be taken seriously.  In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, per policy and procedure, that inmate will be moved immediately.

12.    Neither the Plaintiff nor anyone else had ever made me aware that the Plaintiff had been threatened by Eason or felt that she was in danger because she was housed with Eason. The Plaintiff never asked me to separate her from Eason.

13.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook.  It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates

2

are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.

14.    I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

15.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


_Patricia Guthrie_

PATRICIA GUTHRIE


**SWORN TO and SUBSCRIBED** before me this 25 day of October, 2006.


_Marianne Adams_

NOTARY PUBLIC

My Commission Expires: MY COMMISSION EXPIRES JULY 18, 2008

3

**Exhibit M
Affidavit of Chris Nail**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| BERTHA ALLEN,       ) | |
|       ) | |
|     **Plaintiff,**      ) | |
|       ) | |
| **v.**       ) | **Civil Action No. 3:06-cv-00772-WKW-DRB** |
|       ) | |
| **TALLAPOOSA COUNTY**    ) | |
| **JAIL STAFF, et al.,**     ) | |
|       ) | |
|     **Defendants.**      ) | |

## AFFIDAVIT OF CHRIS NAIL

| | |
|---|---|
| **STATE OF ALABAMA**      ) | |
|       ) | |
| **COUNTY OF TALLAPOOSA**    ) | |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Chris Nail, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Chris Nail. I am over the age of nineteen and competent to make this affidavit. I have personal knowledge of the matters set forth in this affidavit.

2.     I am employed as a Corrections Officer at the Tallapoosa County Jail. I have been employed in this capacity since February 19, 2004. I was promoted to the rank of Sergeant on January 6, 2006. I graduated from the Corrections Academy on June 17, 2004.

3.     I am familiar with the Plaintiff due to her being incarcerated in the Tallapoosa County Jail.

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.    I never received a grievance from the Plaintiff regarding Ms. Eason.  Before the incident in Ms. Allen's complaint, I was aware of no animosity or history of fighting between Ms. Allen and Ms. Eason.

6.    It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

7.    Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

8.    Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

9.    Inmates are housed separately from any known enemies.

10.    An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger.  Each cell is equipped with an intercom, so an inmate may make such a request at any time.

11.    All Tallapoosa County Jail officers understand that such a request is to be taken seriously.  In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, per policy and procedure, that inmate will be moved immediately.

12.    Neither the Plaintiff nor anyone else had ever made me aware that the Plaintiff had been threatened by Eason or felt that she was in danger because she was housed with Eason.

2

The Plaintiff never asked me to separate her from Eason. Further, I was never aware of any problems between the Plaintiff and Eason or history of animosity or fighting between Plaintiff and Eason until after the incident made the basis of the Complaint took place.

13.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.

14.    I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

15.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_Chris Nail_

CHRIS NAIL

**SWORN TO** and **SUBSCRIBED** before me this 24 day of October, 2006.

_Marianne Adams_

NOTARY PUBLIC
My Commission Expires MY COMMISSION EXPIRES JULY 18, 2008

3

**Exhibit N**
**Affidavit of Dodi Shaddix**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **BERTHA ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-cv-00772-WKW-DRB** |
| | ) | |
| **TALLAPOOSA COUNTY** | ) | |
| **JAIL STAFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF DODI SHADDIX

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF TALLAPOOSA** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Dodi Shaddix, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.  My name is Dodi Shaddix. I am over the age of nineteen and competent to make this affidavit. I have personal knowledge of the matters set forth in this affidavit.

2.  I am employed as a Corrections Officer at the Tallapoosa County Jail. I am a graduate of the Corrections Academy. I was so employed during Ms. Allen's incarceration in the Tallapoosa County Jail.

3.  I am familiar with the Plaintiff due to her being incarcerated in the Tallapoosa County Jail.

4.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which she was entitled.

5.     In April of 2006, prior to the incident with Kristy Jones, Ms. Eason stated to me that she was "in a fighting mood today." I told Ms. Eason that if any sort of confrontation happened, if cross words were said or if she felt like a fight was going to break out to push the call button in the cell and she would be immediately removed.

6.     Ms. Allen overheard Ms. Eason's statement and stated to me that "you could feel threatened by Missy." Ms. Allen never stated or indicated to me that she felt threatened by Missy Eason. Ms. Allen has never made any comment to me indicating that she feared violence from Ms. Eason.

7.     I told Ms, Allen that if she has any problems with Eason and felt like there might be a fight, she should push the intercom button in the cell to call a corrections officer and Allen would be removed from the cell. I was not aware of any history of animosity or fighting between Ms. Allen and Ms. Eason.

8.     After the altercation between Baker and Eason, I was not involved in placing Eason back into cell A-2.

9.     I never received a grievance from the Plaintiff regarding Ms. Eason.

10.    It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail.

11.    Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail.

2

12.    Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies.

13.    Inmates are housed separately from any known enemies.

14.    An inmate may make an oral or written request at any time to any officer to be moved to a different cell if she has been threatened or is otherwise in danger. Each cell is equipped with an intercom, so an inmate may make such a request at any time.

15.    All Tallapoosa County Jail officers understand that such a request is to be taken seriously. In the event an inmate requests to be moved because she has been threatened or is otherwise in danger, per policy and procedure, that inmate will be moved immediately.

16.    The Plaintiff had never made a request to me to be separated from Missy Fason.

17.    Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook. It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have. Any officer receiving a grievance form is to pass the grievance on to either the Jail Administrator or the Lieutenant for appropriate handling. A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.

18.    I have complied with all policies and procedures of the Tallapoosa County Jail. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

3

19.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


_____
DODI SHADDIX


**SWORN TO** and **SUBSCRIBED** before me this 25 day of October, 2006.


_____
NOTARY PUBLIC
My Commission Expires: MY COMMISSION EXPIRES JULY 18, 2008

4

**Exhibit O**
**Inmate grievance policy from Tallapoosa County**
**Jail Inmate Handbook**

# HANDBOOK

## ON

# INMATE RULES AND

# REGULATIONS

**TALLAPOOSA COUNTY JAIL**
**DADEVILLE, ALABAMA**

**A Division Of**
**The Tallapoosa County Sheriff's Office**

**JIMMY ABBETT, SHERIFF**



**DAVID McMICHAEL, JAIL ADMINISTRATOR**

**REVISED 8/01/2002**

inmate's release will be deposited into the Tallapoosa County Jail Commissary Fund.

## C. Escape and Contraband

Any inmate who escapes (includes walking off work detail), attempts to escape, assists another to escape or is responsible for bringing into the Jail Facility any weapon, saws, tools, narcotic drugs, alcohol, hallucinogenic substances, or any item not approved by the Jail Facility will be prosecuted as provided by law.

## D. Grievance

All inmates are entitled to voice any grievance. Grievances cannot be filed as a group. Only the inmate with the grievance can file. A "GRIEVANCE FORM" can be requested from any correctional officer or Nurse. When completed (include your NID#) return it to the staff officer and You will receive a reply in a reasonable amount of time. You may appeal the decision or action in writing to the Jail Administrator of Tallapoosa County within seventy-two (72) hours of the return receipt. You may appeal this decision or action in writing to the Chief Deputy within Seventy two (72) hours of the return receipt. The final step of the appeal process will be to the Sheriff if written notice is given within seventy two (72) hours of receipt from the Chief Deputy.

## E. Food

You will be served three (3) meals a day at regular intervals. The food will be wholesome and nutritional. Since food is expensive, you must not waste it. The menus meet recommended dietary allowances of "Local Health Code Standards". Any abuse of food, food trays, utensils or failure to return all trays and accessories (forks, cups, etc.) when requested by Jail Staff will result in disciplinary action taken against one or all inmates in that cell block.

19

**Exhibit P**
**Allen Grievance dated March 23, 2006**

# COPY

```
09/14/2006          Tallapoosa County Sheriff's Department              433
10:40                         Jail Log:                        Page:    1

   Event Number:    588208                               Inactive
       Name ID:     41012
+--------------------------------------------------------------------------+
| Last: ALLEN                    First: BERTHA          Mid: YVONN |
| Addr  6121 JENNIFER LANE              Phone: (334)281-6720       |
| City: MONTGOMERY        ST: AL  Zip: 36101  DOB: 05/24/1958 SSN: 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 |
|                                                                 |
+--------------------------------------------------------------------------+
   Time/Date of Event: 21:43:56 03/23/2006     Treatment Date:
         Type of event: 006  Grievance
              Quantity:    0.00
               Officer: AVA MASON
        Booking Number: 06-000478
           Description:
(See below)
```

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

Description:

Grievance: IT WAS HEALTH VIOLATION TO FORCE EVERY INMATE TO USE THE SAME HAIR COMB, DUE TO CLOSE ENVIRONMENT WHERE AS NO GERMICIDICAL CHEMICALS IS USED ON AN INMATE UPON ENTERING THIS FACILITY. GERMICIDICAL CHEMICALS ARE A MAJOR PROCESS THAT IS USED IN MAJORITY JAIL, PRISON FACILITIES TO STOP THE GERMS, HEAD LICE, CRABS, SCABIES, ETC. THIS IS A MAJOR VIOLATION TO FORCE ME TO USE A HAIR COMB THAT HAS NOT BEEN TREATED FOR SUCH BACTERIA. THIS IS A VIOLATION OF MY 8TH/ 13TH AMMENDMENT OF CRUEL AND UNUSUAL PUNISHMENT, EQUAL RIGHTS OF PROTECTION OF HEALTH AND PROTECTION.

Suggested Solution: THAT EACH INMATE BE GIVEN A HAIR COMB FOR THEIR OWN PERSONAL USE, THAT THE FACILITY START SPRAYING EVERY INMATE THAT IS DETAINED OVER A 4 HR. PERIOD BEFORE BEING PLACED IN POPULATION WITH OTHER OTHER INMATES, MAINTAIN A MORE GERM FREE FACILITY TO ELIMINATE SUCH GROWTH OF FLYING INSECTS NOTIFIED BY ME IN HERE.

Action Taken by CO: IT IS NOT THE POLICY OF THE TALLAPOOSA CO. JAIL TO FORCE ANY INMATE TO USE ANOTHER INMATE'S COMB. IF YOU DO THIS BY CHOICE, YOU DO SO AT YOUR OWN RISK. WE DO NOT ISSUE COMBS, BUT I WILL DISCUSS THE POSSIBILITY OF PUTTING THEM BACK ON COMMISSARY WITH JAIL MANAGEMENT.

Action Taken by Jail Administrator: